IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

**MELENE R. VENABLE**, )
)
      *Plaintiff,* )
)
──— vs.──— )
)
**WAL MART STORES, INC.**, )
) Case No. 2:17-cv-4111
  and )
)
**LINDSAY FARROW** )
)
  and )
)
**DWIGHT HUDDLESTON**, )
)
      *Defendants.* )

---

**FIRST AMENDED COMPLAINT**

---

INTRODUCTION

1. This is an action for damages brought by Plaintiff Melene R. Venable for Defendants' violations of the Americans with Disabilities Act, codified at 42 U.S.C. § 12101, *et seq.*, (hereinafter "ADA"), which provides remedies for workers suffering discrimination against them based on disabilities.

PARTIES AND JURISDICTION

2. Plaintiff is a citizen and resident of Missouri and is an "employee" as defined by 42 U.S.C. § 12111(4).

3. Defendant Wal-Mart Stores, Inc., is an Arkansas corporation doing business in Missouri which at all relevant times owned the Wal-Mart Store #219 located in Sedalia, Pettis County, Missouri. Said defendant is an "employer" as defined by 42 U.S.C. § 12111(4), and at all relevant, said defendant acted by and through its agents, servants, and employees, all within the course and scope of their agency, service, and employment.

4. Upon information and belief, Defendant Farrow is a citizen and resident of the state of Missouri, and at all relevant times was an employee of Defendant Wal-Mart was vested with authority to hire and fire personnel occupying such positions as Plaintiff occupied while employed by Defendant Wal-Mart as hereafter alleged.

5. Upon information and belief, Defendant Huddleston is a citizen and resident of the state of Missouri, and at all relevant times was an employee of Defendant Wal-Mart vested with authority to hire and fire personnel occupying such positions as Plaintiff occupied while employed by Defendant Wal-Mart as hereafter alleged.

6. Jurisdiction herein is proper in that this cause of action is based on federal law, specifically Defendants' violations of the ADA as hereafter alleged.

7. Pursuant to 28 U.S.C. § 1367(a), this Court has supplemental jurisdiction of the state-law claim asserted herein because that

claim is so related to said federal-question claim that it forms a part of the same case or controversy.

8. Defendants have submitted to personal jurisdiction herein by virtue of having transacted business within Missouri and committing the acts complained of herein in Missouri.

9. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b)(2) in that Defendants transacted business in this district, and the conduct complained of herein occurred in this district.

## FACTUAL ALLEGATIONS

10. In the year 2008, Defendant Wal-Mart hired Plaintiff as a full-time, regular employee to perform services as a cashier and door-greeter.

11. At the time of hire, Plaintiff was suffering from a condition known as fibromyalgia, a disorder characterized by widespread musculoskeletal pain accompanied by generalized fatigue and problems associated with sleep, memory, and mood.

12. Also at the time of hire, Plaintiff told Defendant Wal-Mart's agents, servants, and employees that she suffered from fibromyalgia, but that she could perform all assigned duties with or without any accommodations for her condition.

13. Plaintiff thereafter successfully performed all assigned duties as a cashier and door-greeter, although because of her

condition she was limited to working no more than five hours per day, four days per week.

14. Also because of her condition, Plaintiff required occasional leaves of absence which Defendant Wal-Mart approved.

15. [DESCRIBE HERE DISCRIMINATION RELATED TO FIBROMYALGIA]

16. In February, 2016, Plaintiff felt a burning, searing pain in her dominant arm -- her right arm -- while performing duties as a cashier.

17. Defendant Wal-Mart personnel authorized medical care for as a result of this injury, but denied her a brace the doctor required her to wear and refused to fill a prescription that the doctor had ordered.

18. At all times during the period from her injury to her termination, Plaintiff's medical appointments were scheduled and/or approved by Defendant Wal-Mart personnel.

19. Several appointments were scheduled during Plaintiff's regular work hours, and Plaintiff was assured by Defendant Huddleston that these absences would not count against her.

20. Despite her work-related injury, Plaintiff was able to perform the duties of her employment, although Defendant Huddleston and other employees positioned Plaintiff at locations within the store which rendered her either unlikely to encounter store customers as a greeter or in the way of customers as they tried to shop.

21. Plaintiff missed a total of nine (9) days over a three (3) month period for medical appointments or due to pain from her work-related injury.

22. Plaintiff was never instructed to apply for leave to cover the days missed due to her injury until three (3) months after the first of the absences.

23. Upon being instructed to apply for leave to cover the previous missed days, Plaintiff immediately began to follow Wal-Mart procedures for applying for medical leave.

24. Plaintiff's doctor (hired by Defendant Wal-Mart) refused to sign for the days missed because they were over three (3) months old, and the doctor would have signed for the missed days had Defendant Wal-Mart personnel told Plaintiff to get the signature sooner.

25. Plaintiff's request for leave was denied due to the doctor's refusal to sign for the missed days, so the missed days became a permanent part of her employment record.

26. Following the denial of her leave, Plaintiff hired an attorney to pursue a worker's compensation claim because she perceived Wal-Mart's refusal to ensure her leave was approved was an extension of the ridicule and contempt they had for her fibromyalgia and for her injury.

27. Wal-Mart personnel thereafter denied Plaintiff's attorney's requests for approval of her absences.

28. On September 23, 2016, Defendant Farrow instructed Plaintiff to again apply for leave for the missed days according to Wal-Mart procedures, despite the fact that the previous request had been denied.

29. Defendant Farrow told Plaintiff that "her hands were tied" because Plaintiff had hired an attorney.

30. Defendant Farrow also stated that she had been able to help another employee in Plaintiff's situation who had not hired an attorney, but she could not help Plaintiff because Plaintiff had hired an attorney.

31. Immediately after leaving the meeting with Defendant Farrow, Plaintiff began the process of applying for medical leave for her previous missed days.

32. Defendant Farrow gave Plaintiff fifteen (15) days to comply with this request, and Plaintiff in fact complied with it.

33. Nevertheless, Defendant Farrow fired Plaintiff on September 28, 2016, just five (5) days after telling Plaintiff that she had fifteen (15) days to apply for leave for the missed days.

34. As a result of the foregoing, Plaintiff has suffered damages, including lost wages, employment benefits, and other compensation, as well as costs and attorney fees in prosecuting this cause of action.

35. Plaintiff timely filed her administrative charge of discrimination with the Equal Employment Opportunity Commission, and thereafter was sent a Write to Sue Letter on March 28, 2017.

****************** END OF FACTUAL ALLEGATIONS ******************

CLAIMS FOR RELIEF

**COUNT I**
**Violation of the ADA**

36. Plaintiff incorporates into this count the foregoing factual allegations.

37. The ADA prohibits employment discrimination based on an employee's disabilities.

38. Plaintiff was "disabled" within the meaning of the ADA because her fibromyalgia and arm injury substantially limited one or more of her major life activities in that the fibromyalgia caused her to suffer widespread musculoskeletal pain accompanied by generalized fatigue and problems associated with sleep, memory, and mood,; and the arm injury disabled her dominant arm leaving her to perform daily activities of living with her non-dominant arm.

39. There is a record of Plaintiff's disabilities by virtue of her first obtaining employment with Defendant Wal-Mart and telling its personnel about her fibromyalgia, and by virtue of suffering an on-the-job injury to her arm.

40. Defendants regarded Plaintiff as having said disabilities because they exposed her to ridicule and contempt as to her fibromyalgia, encouraged her to get approved leave of absence as to her arm injury while punishing her for having an attorney, and fired her because of her disabilities.

41. Plaintiff was qualified to perform the essential functions of her employment, with or without accommodation, and until being.

42. Defendants violated the ADA by exposing her to ridicule and contempt, by punishing her for hiring an attorney, and by firing her due to her disabilities, all of which deprived Plaintiff of equal employment opportunities and otherwise adversely affected her status as an employee because of her disabilities.

43. Defendants' acts as described above were intentionally or recklessly made and directly caused or contributed to cause Plaintiff's damages.

44. As a result of Defendants' violations of the ADA, Plaintiff is entitled to awards of damages, together with costs and attorney fees, to include:

    a. Past and future wages, employment benefits, and other compensation, together with interest, denied to and/or lost by Plaintiff;

b. Past and future pecuniary losses, including medical expenses, and retirement or pension contributions not covered by Defendant Board of Curator's employee-benefits plan;

c. Past and future non-pecuniary losses, including, but not limited to, emotional pain, suffering, inconvenience, and mental anguish; and

d. All costs and attorney fees.

45. Defendants' actions demonstrate that they engaged in a discriminatory practice, or practices, with malice or with reckless indifference to Plaintiff's rights. Accordingly, Defendants should be ordered to pay Plaintiff the maximum amount of punitive damages authorized by law.

**WHEREFORE,** Plaintiff prays that judgment be entered against Defendants:

A. Requiring Defendants to pay Plaintiff the maximum amount of damages, both actual and/or liquidated, and interest;

B. Requiring Defendants to pay all costs of this action;

C. Requiring Defendants to pay Plaintiff's attorneys fees; and

D. Requiring such other and further relief as may be consistent with substantial justice.

## COUNT II
### Retaliatory Discharge under Missouri law

46. Plaintiff incorporates into this count the foregoing factual allegations.

47. Section 287.780 of the Missouri Revised Statutes prohibits discrimination against an employee for exercising rights under Missouri worker's compensation law.

48. Plaintiff was employed by Defendant Wal-Mart at and before her injury in March, 2016.

49. Plaintiff hired an attorney in order to exercise her rights under Missouri worker's compensation law, Mo. Rev. Stat. § 287.010, et seq., and she in fact exercised those rights.

50. Defendants discriminated against Plaintiff by refusing to work with her attorney to get her medical leave approved; by suggesting to Plaintiff she should get rid of her attorney so that the attorney would not get in the way; and by firing her because she sought worker's compensation benefits, along with the other reasons stated in Count I.

51. Plaintiff's exercise of her rights under Missouri worker's compensation law was a contributing factor to Defendants' said acts of discrimination.

52. Defendants' acts as described above amounted to retaliatory discharge and were intentionally or recklessly made and directly caused or contributed to cause Plaintiff's damages.

53. As a result of Defendants' retaliatory discharge, Plaintiff is entitled to awards of damages, together with costs and attorney fees, to include:

a. Past and future wages, employment benefits, and other compensation, together with interest, denied to and/or lost by Plaintiff;

b. Past and future pecuniary losses, including medical expenses, and retirement or pension contributions not covered by Defendant Board of Curator's employee-benefits plan;

c. Past and future non-pecuniary losses, including, but not limited to, emotional pain, suffering, inconvenience, and mental anguish; and

d. All costs and other relief as allowed by law.

## Jury Demand

54. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff prays that judgment be entered against Defendants:

A. Requiring Defendants to pay Plaintiff the maximum amount of damages, both actual and/or liquidated, and interest;

B. Requiring Defendants to pay all costs of this action; and

C. Requiring such other and further relief as may be consistent with substantial justice.

Respectfully submitted,

**HANRAHAN & NACY, P.C.**

by: */s/ William P. Nacy*
WILLIAM P. NACY, MBE #52576
522 E. Capitol Ave.
Jefferson City, MO 65101

```
                              Telephone (573) 636-7900
                              Telefacsimile (573) 556-6340
                              pete@midmolegal.com

                              Attorneys for Plaintiff
```